(101 App. Div. 325)

PEOPLE ex rel. AUTOMATIC VENDING CO. v. KELSEY, State Comptroller.

(Supreme Court, Appellate Division, Third Department. January 10, 1905.)

1. FOREIGN CORPORATIONS — LICENSE AND FRANCHISE TAXES — ASSESSMENT— CAPITAL WITHIN STATE.

    Where a foreign corporation had a capital of $1,000,000, on which it paid 6 per cent. dividends, and issued $784,637.86 of the par value of its stock in payment for various patents, and its president testified that $132,212.11 of its capital was employed within the state, and $132,084.97 outside, the Comptroller was entitled to take such portion as a basis for assessing its franchise and license tax, and to determine that $500,240, or slightly more than half, was employed within the state, and to assess taxes on such sum.

2. SAME—PATENTS—VALUE.

    Where a foreign corporation manufactured slot machines for the vending of merchandise under certain patents, for which it issued $784,627.86 of the par value of its capital stock, it was proper for the Comptroller to assess the value of such patents at the amount paid therefor, in assessing the corporation's franchise and license taxes required by Laws 1896, p. 856, c. 908, § 181, in the absence of other proof as to the value thereof.

3. SAME.

    Where a foreign corporation engaged in the sale of merchandise through slot machines purchased five patents for upwards of $600,000 in stock, the fact that two of such patents had proved worthless did not entitle the corporation to a deduction therefor in determining the amount of franchise and license taxes assessable against it, in the absence of proof as to the amount paid for each of such patents.

Certiorari by the people, on relation of the Automatic Vending Company, against Otto Kelsey, as Comptroller of the state of New York, to review a license and franchise tax assessment against relator. Determination affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Sheehan & Collin, for relator.

John Cunneen, Atty. Gen., and William H. Wood, Deputy, for respondent.

HOUGHTON, J. The relator is a foreign corporation, and manufactures and leases weighing scales and automatic vending or "slot" machines, and sells supplies therefor. The several parts of the machines are manufactured by another corporation in New Jersey, and they are shipped to the relator at New York, where they are assembled by it, and the complete machines distributed throughout various states. The capital stock is $1,000,000, upon which a 6 per cent. dividend was paid for the year in question. Of the stock, $784,637.86 was issued at par in payment for various patents relating to the machines manufactured and leased by the relator. It is claimed that many of these patents proved worthless, and that it is of no great benefit to the relator to manufacture under them, and that this fact should have been taken into consideration by the Comptroller in determining the amount of capital employed by the relator within the state.

Upon the rehearing before the Comptroller, the president of the relator testified that $132,212.11 of its capital was employed within the

state, and $132,084.97 outside. The Comptroller took this proportion of slightly more than half employed within the state, and determined that $500,240 was so employed, and assessed the license tax, under section 181 of the tax law (Laws 1896, p. 856, c. 908), on that basis. In so doing he must have assumed that the large remainder of the capital was represented by rights under the patents. We see no vice in this. The Comptroller was not bound to accept the relators' estimate of their value, or their statement that they could as well carry on their business without them. He had a right to take into consideration the price paid, especially in view of the fact that the corporation manufacturing under them was enabled to pay a 6 per cent. dividend on the large amount of stock issued for their purchase. Rights under a patent may be of uncertain value, difficult to ascertain. It is possible that a manufacturing corporation might make as great profit without them, but, where it is manufacturing under patents, we know of no better practical method of ascertaining the value of the rights for the purposes of license and franchise tax than to assume that they are worth what was paid for them. The situation is not unlike the ascertaining of the value of the good will of a business, which was recently under consideration by this court in People ex rel. Koechl & Co. v. Morgan, 96 App. Div. 110, 88 N. Y. Supp. 1066. In that case we held that it was not improper for the Comptroller to estimate the good will at the amount which was paid for it.

But it is said that two of the five patents, for which upwards of $600,000 in stock was issued, have proved worthless. It does not appear what amount was paid for each patent, and, in the absence of such proof, we cannot say how much, if anything, should be deducted. It may be that those which have proved available are worth the price paid for all.

About 35 per cent. of all the machines leased throughout the United States are leased within the state of New York. If the relator did not have a place of business within the state, and employ additional capital therein, possibly this proportion would represent its only capital employed within the state. Its entire business, however, is affected by, and in a measure dependent upon, its rights under its patents, and we are of the opinion that sufficient does not appear to authorize us in disturbing the finding of the Comptroller.

For some reason, not clear, the franchise tax was assessed upon a lower basis than was the license tax. This is to the advantage of the relator, and not a cause of complaint on its part.

The determination of the Comptroller should be affirmed, with $50 costs and disbursements. All concur.